UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TAMALA K.,[1] | ) |
| Plaintiff, | ) No. 22-cv-5608 |
| v. | ) Magistrate Judge Keri L. Holleb Hotaling |
| MARTIN J. O'MALLEY, Commissioner of the Social Security Administration,[2] | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Tamala K. appeals the decision of the Defendant Commissioner ("Commissioner") of the Social Security Administration ("SSA") denying her disability benefits. For the reasons set forth below, Plaintiff's motion for summary judgment (Dkt. 16) is DENIED; the Commissioner's motion for summary judgment (Dkt. 18) is GRANTED. The Commissioner's decision is affirmed.

I.  BACKGROUND

   A.  Procedural History

On November 11, 2020, Plaintiff filed an application for disability insurance benefits ("DIB") and an application for supplemental security income ("SSI"), both alleging disability beginning on April 28, 2020 (the day after an April 27, 2020 opinion denying Plaintiff's earlier application for DIB). (R. 183-94.) Plaintiff's November 11, 2020 applications were denied initially and upon reconsideration. (R. 73-88, 93-102.) An Administrative Law Judge ("ALJ") held an

---

[1] In accordance with Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff only by her first name and the first initial of her last name(s).

[2] On December 23, 2023, Martin J. O'Malley was sworn in as Commissioner of the Social Security Administration; pursuant to Federal Rule of Civil Procedure 25(d)(1), he is substituted as the proper defendant for this action.

Administrative Hearing and subsequently issued a March 24, 2022 decision finding that Plaintiff was not disabled. (R. 16-33.) On August 10, 2022, the Appeals Council denied Plaintiff's request for review (R. 1-7), rendering the ALJ's decision the final decision of the Commissioner, reviewable by the district court under 42 U.S.C. § 405(g). *See* 20 C.F.R. § 404.981; *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2004). Plaintiff filed this lawsuit seeking review of the ALJ's decision (Dkt. 1), and the case was reassigned to Magistrate Judge Keri L. Holleb Hotaling's initial caseload when she assumed the bench on August 10, 2023 (Dkt. 21).

### B. The ALJ's Decision

The ALJ analyzed Plaintiff's claim following the SSA's usual five-step sequential evaluation process to determine whether Plaintiff was disabled during the relevant period. (R. 16-33); *see also* 20 C.F.R. §§ 404.1520(a) (DIB), 416.920(a) (SSI). The ALJ found at step one that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2022 and had not engaged in substantial gainful activity since her alleged disability onset date of April 28, 2020. (R. 19.) At step two, the ALJ concluded that Plaintiff had the following severe impairments: spondylosis and degenerative changes of the lumbar spine, osteoarthritis of the bilateral knees, mild osteoarthritis of the hips, mild calcaneal spur, superficial venous reflux, obesity, bipolar disorder, and anxiety disorder. (R. 19.) The ALJ determined Plaintiff also had several non-severe impairments. (R. 19-20.) The ALJ concluded at step three that Plaintiff's impairments, alone or in combination, did not meet or medically equal one of the Social Security Administration's listings of impairments. (R. 20-24.)

Before step four, the ALJ determined Plaintiff retained the residual functional capacity ("RFC"):

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can no more than occasionally climb ladders, ropes or scaffolds, climb ramps or stairs, stoop, crouch,

> kneel, or crawl. The claimant can understand, remember, carry out and sustain no more than routine tasks and no complex tasks, performing the same tasks day in and day out. She can have no contact with the public for work purposes and no more than occasional contact with coworkers and supervisors for work purposes. The claimant cannot perform work where a machine sets the pace of the work."

(R. 24.) At step four, the ALJ concluded Plaintiff would be unable to perform her past relevant work. (R. 30-31.) At step five, the ALJ concluded that, given Plaintiff's RFC, age, high school education, and work experience, there were jobs in significant numbers in the national economy Plaintiff could perform. (R. 31-32.) The ALJ ultimately found Plaintiff was not disabled under the Social Security Act for the purposes of either her DIB or SSI application. (R. 32-33.)

### C. Standard of Review

On review, the Court does not "merely rubber stamp the ALJ's decision," but "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion[,]'" *id*. (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938) (further citation omitted)); *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021), and the Court must affirm even if "reasonable minds could differ" or the evidence would support another conclusion. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2018); *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004).

The ALJ need only "'minimally articulate'" the "'justification for rejecting or accepting specific evidence of a disability'" to satisfy the "lax" standard. *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008) (quoting *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004)). Under this standard, the Court is not to try the case de novo or supplant the ALJ's findings with the Court's

assessment of the facts, whether as to credibility or conflicting record evidence. *Young*, 362 F.3d at 1001; *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000).

## II. ANALYSIS

Plaintiff argues the ALJ erred in the following ways: (1) allegedly failing to account for the moderate limitations the ALJ found Plaintiff had in the areas of concentrating or persisting in the RFC; (2) allegedly improperly rejecting the opinions of Dr. Amdur, a psychologist Plaintiff's counsel hired to provide an opinion; and (3) improperly allegedly discounting Plaintiff's subjective allegations of her symptoms. The Court begins with the ALJ's related analysis[3] and then addresses Plaintiff's arguments.

### A. The ALJ's Analysis

Before determining Plaintiff's RFC, the ALJ evaluated Plaintiff's mental limitations to consider whether the related so-called "Paragraph B" criteria were satisfied. As to the four Paragraph B criteria, the ALJ determined that Plaintiff had mild limitations in the areas of adapting or managing oneself and understanding, remembering, or applying information, and moderate limitations in the areas of interacting with others and concentrating, persisting, or maintaining pace.

In assessing Plaintiff's mental RFC, the ALJ discussed Plaintiff's testimony, submissions, mental health treatment, and assessments. (R. 24-30.) The ALJ emphasized that, from the April 28, 2020 alleged onset date, through January of 2022, the record contained no evidence Plaintiff was in mental health care treatment, although Plaintiff was taking psychiatric medications prescribed by her primary health care provider. (R. 26.) Plaintiff testified she had insurance coverage and had not had behavioral health sessions for about two years. (*Id.*)

---

[3] Plaintiff raises no challenge to the ALJ's assessment of Plaintiff's physical impairments or drafting of the physical RFC, so the Court will not address those.

On February 2, 2021, State Agency psychological consultant Stephen Drake, Ph.D., opined that there was insufficient evidence to assess Plaintiff's impairments.[4] (R. 28, 77-78.) On reconsideration on July 27, 2021, Dr. Ranga Reddy affirmed that opinion. (R. 28, 94-95.)[5] The ALJ found these opinions unpersuasive because, although supported with reference to the record as it existed at the time of their opinions, they had not reviewed the entire record the ALJ had before her. (R. 28.)

On November 13, 2021, at the behest of Plaintiff's counsel, Plaintiff underwent a one-time psychiatric diagnostic evaluation by Dr. Mark A. Amdur, M.D. (R. 26, 27, 389-95.) Plaintiff reported depression and anxiety, worse after the death of her partner eleven years earlier, as well as reticence to bathing, panic attacks, and fear of germs. (R. 26.) Dr. Amdur described Plaintiff's affect as restless and fidgety and her speech as "mildly pressured" and noted that she required redirection and repetition of questions. (R. 26, 393.) Dr. Amdur opined that Plaintiff would have difficulty relating effectively and efficiently with others in the workplace, reliably arriving at work on time, maintaining speed and efficiency, and tolerating work stresses. (R. 29.)

The ALJ also found Dr. Amdur's opinion unpersuasive, noting that Dr. Amdur did not: have a treating relationship with Plaintiff; use a function-by-function analysis used by the Agency to assess disability; indicate the time frame involved for his purported limitations; or provide more than a little objective support for his assessments beyond Plaintiff's subjective statements. (*Id*.) For example, Plaintiff self-reported to Dr. Amdur that she would have difficulty reliably being on

---

[4] Dr. Drake stated "[t]he available evidence is insufficient to assess the severity of [Plaintiff's] condition or to show she meets the requirements for disability." (R. 78.) He noted that Plaintiff had "failed to return first and second request for ADLs[] and did not respond to call in notice"; "[a]ttempts to contact [Plaintiff] and appointed Rep were made via telephone (voicemail) and call notice with unsuccessful response"; and "[a] CE is needed, but it is unclear if claimant would attend." (*Id*.) "ADL" refers to "activities of daily living." *Dominque C. v. O'Malley*, No. 21-cv-4565, 2024 WL 897446, at *3 n.4 (N.D. Ill. Mar. 1, 2024). A "CE" is a consultative examination. *Randle B. v. Comm'r Soc. Sec.*, No. 3:20-CV-781-MAB, at *3 (S.D. Ill. Mar. 23, 2023).

[5] Dr. Reddy indicated that Plaintiff "did not return the ADL/work hx" and that "[l]egal rep [was] aware of overdue forms" that "were necessary to complete the claimant's reconsideration review." (R. 95; *see* R. 28.)

time to work; later in his assessment, Dr. Amdur opined that Plaintiff would have difficulty reliably being on time. (R. 30.) The ALJ, though, noted that "[t]here is no pattern of missed treatment visits" or any report that Plaintiff "previously [was] unable to work due to difficulty with attendance." (*Id*.)

On the literal eve of her Administrative Hearing, in January of 2022, Plaintiff had a behavioral health evaluation, at which she reported a sad mood, low energy, poor focus, irritability, frequent worry, restlessness, panic attacks, agoraphobia, and organizing behaviors. (R. 26.) Plaintiff's mental status examination showed depressed mood and anxious affect but was otherwise unremarkable, and Plaintiff was diagnosed with bipolar disorder and anxiety disorder and recommended to pursue bi-monthly counseling. (*Id*.) At a follow-up later that month, Plaintiff showed a depressed mood and anxious affect; the evaluator noted that Plaintiff had impaired insight and tangential thought processes but did not specify how. (*Id*.)

The ALJ found Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms to be inconsistent with the conservative treatment history and objective examinations. (R. 27.) Although Plaintiff saw a counselor years previously, that counselor left before the COVID-19 pandemic began, and Plaintiff did not resume behavioral health treatment for about two years. (*Id*.) She indicated she had insurance coverage and did not mention any financial or insurance issues in obtaining treatment. (*Id*.) The ALJ, though, accepted that Plaintiff "at times" had problems focusing, "demonstrated pressured speech," and was "impatient," having had an "anger issue" at a store. (R. 26, 27, 29, 30.)

Citing Plaintiff's "pressured speech" and impatience, the ALJ constructed an RFC that limited Plaintiff's contact with the public and coworkers and supervisors. (R. 27-28) The ALJ stressed that Plaintiff "retains the ability to understand, remember or apply information, concentrate, persist or maintain pace, and adapt or manage herself in order to participate in and

6

complete treatment appointments that she attends alone." (R. 27, 30; *see also* R. 29 ("[N]o greater functional limitations are warranted [as to Plaintiff's ability to interact with others], as [Plaintiff] is able to live with others and does leave her residence to shop and visit her mother" and "is able to be in enclosed spaces with strangers, such as when using public transportation.").)

The ALJ further "considered" Plaintiff's difficulty focusing and with anxiety in "limiting [her] to routine and not complex tasks, so [Plaintiff] does not have to understand, remember, concentrate or persist in complex tasks" and "preclud[ing] work where a machine sets the pace of work, so [Plaintiff] does not have to keep up with a machine in order to complete job tasks." (R. 28.) Further, the ALJ limited her "to performing the same tasks day in and day out so she will not have to learn to do new and/or different work tasks, processes, or procedures." (R. 30; *see also* R. 28, 29.) The ALJ found "no greater limitations are warranted, as [Plaintiff] has sufficient understanding, remembering, application skills, concentration, persistence and pace to handle finances, go out alone without evidence of getting lost or confused, learn how to and use a cell phone and tablet, learn how to, access and manipulate email and Facebook, to use public transportation, and to drive." (R. 24, 28, 29, 30.) The ALJ also noted Plaintiff's "minimal conservative treatment for her . . . mental health complaints . . . does not suggest greater functional limitations than those adopted herein." (R. 27.)

> B. **The ALJ Properly Accounted for Plaintiff's Limitations in Concentration, Persistence, and Pace**

Plaintiff first argues that the ALJ did not account for her moderate limitation in concentration, persistence, and pace because, although the ALJ set a pacing limitation that Plaintiff does not challenge, the ALJ nevertheless failed to accommodate Plaintiff's limitations in concentration and persistence. Plaintiff insists that "catch-all terms like simple, repetitive tasks are generally insufficient [to accommodate such limitations] because there is no basis to conclude that

they account for problems of concentration, persistence, or pace." (Dkt. 17 at 7 (quoting *Gary R. v. Kijakazi*, No. 20-cv-6109, 2022 WL 4607681, at *17 (N.D. Ill. Sept. 30, 2022)).) The Court disagrees.

Plaintiff is correct that "boilerplate 'limitations of concentration, persistence, and pace' including limiting a claimant's abilities to 'simple, routine tasks that do not require constant interactions with coworkers or the general public' *may* be insufficient to address a claimant's capacity," *Recha v. Saul*, 843 F. App'x 1, 4 (7th Cir. 2021) (emphasis added) (quoting *Stewart v. Astrue*, 561 F.3d 679, 685 (7th Cir. 2009)), but here, rather than choosing a one-size-fits-all limitation to simple tasks, the ALJ carefully supported her RFC determination concerning Plaintiff's limitations on concentration and persistence. The ALJ specifically and repeatedly acknowledged the symptoms of Plaintiff's impairments in those areas, including, *inter alia*, pressured speech, anxiety, and impatience, Plaintiff's testimony, and Dr. Amdur's opinion, then accounted for them in the RFC.

The ALJ did so by limiting Plaintiff to routine tasks to be performed day in and day out, with no interaction with the public, and providing for few interactions with coworkers and supervisors. (R. 24, 26, 27, 28, 30); *see Spring W. v. Saul*, No. 20-cv-1864, 2021 WL 2529615, at *5 (N.D. Ill. June 21, 2021) (holding that, rather than "simply employ terms like 'simple, repetitive tasks,' without any further specification," ALJ had "accommodated [claimant's] issues with concentration, stress, and engaging with others by reducing her work to simple, routine, and repetitive tasks in a low-stress environment, with few work-related decisions, and no interaction with the public and only superficial interaction with coworkers"); *Peter L. v. Saul*, No. 19-cv-566, 2021 WL 2473799, at *3-4 (N.D. Ill. June 17, 2021) (upholding RFC mental limitation of "simple, routine, and repetitive tasks, performed in a work environment free of fast-paced production

8

requirements," where it accounted for all mental limitations ALJ found, including depression, frequent crying spells, and anger outburst).

Even if the ALJ's analysis on this issue were flawed, any error was harmless; Plaintiff does not propose any accommodations or restrictions that might address her limitations in concentration and persistence or point to evidence that she cannot perform the tasks the ALJ found she could perform. *See Jozefyk v. Berryhill*, 932 F.3d 492, 498 (7th Cir. 2019) (finding harmless error in accommodating Plaintiff's CPP limitations where claimant hypothesized no restrictions that might address his claimed limitations and cited no evidence he could not perform simple, routine, and repetitive tasks); *see also Spring W.*, 2021 WL 2529615, at *6. The Court will not remand on this ground.

## C. The ALJ Properly Assessed Dr. Amdur's Opinion

Plaintiff next attacks the ALJ's rejection of Dr. Amdur's psychological opinions as not persuasive based on Dr. Amdur's lack of "a treating relationship" with Plaintiff, failure to provide objective support for his assessments, and the inconsistency of his opinions with both "the function-by-function analysis used by the Agency" for disability determinations and Plaintiff's "treatment records." (Dkt. 17 at 11-13.)

Plaintiff first argues that Dr. Amdur's lack of a treating relationship with Plaintiff "is not a reason to reject his opinion" but "is simply one factor to consider" and that his opinion should be "more persuasive" because he examined Plaintiff. (Dkt. 17 at 11.) As Plaintiff concedes, an ALJ appropriately may consider, among other factors, the lack of a treating relationship in evaluating the persuasiveness of a medical opinion. *See* 20 C.F.R. § 404.1520c(c)(3) (listing "[l]ength[,]" "[p]urpose[,]" and "[e]xtent of treatment relationship" as well as "[f]requency of examinations" and "[e]xamining relationship" among factors to be considered in evaluating medical opinions). The ALJ did not, moreover, purport to reject Dr. Amdur's opinion solely because he was not

9

Plaintiff's treating physician but gave multiple reasons for rejecting his opinion, including the lack of consistency and supportability of Dr. Amdur's opinion with the record. 20 C.F.R. § 404.1520c(c). And, to the extent that Plaintiff implicitly suggests Dr. Amdur's opinion must be accepted because it is the only examination opinion in the record, "the ALJ was not required to accept [Dr. Amdur's] opinion simply because it was the only one." *Michael G. v. Kijakazi*, No. 19-cv-6017, 2022 WL 4119775, at *17 (N.D. Ill. Sept. 9, 2022).[6] "[T]hat Dr. Amdur provided the only mental health evaluation, standing alone, does nothing to bolster the weight or import of Dr. Amdur's opinion in the way that Plaintiff suggests." *Id*.

Plaintiff next asserts that the governing statute, regulations, and related texts do not require "that an opinion be a 'function-by-function analysis' to be persuasive." (Dkt. 17 at 11.) Accepting that as true does not demonstrate any error in the ALJ's analysis. The ALJ did not provide this as the sole basis for rejecting Dr. Amdur's opinion; in any event, an ALJ may consider a source's familiarity with the agency's analysis among the other factors in determining the weight to give the source's opinion. *See* 20 C.F.R. § 404.1520c(c)(5) ("We will consider other factors," which "include[] . . . evidence showing a medical source has . . . an understanding of our disability program's policies and evidentiary requirements"); *Michael G.*, 2022 WL 4119775, at *17 ("[T]he ALJ need not have explained why familiarity with agency criteria was relevant, because it is one of the express factors listed in the regulations that an ALJ may consider.") (citing *Vang v. Berryhill*,

---

[6] As it happens, Dr. Amdur also provided an opinion in *Michael G.*, 2022 WL 4119775 and multiple other cases in which courts have affirmed the ALJ's decision giving Dr. Amdur's opinion little weight. *See, e.g., Kristen K. v. Kijakazi*, No. 20-cv-5177, 2022 WL 6123338, at *3-4 (N.D. Ill. Oct. 7, 2022); *Israel D. v. Kijakazi*, No. 19-cv-7666, 2022 WL 2046283, at *8-9 (N.D. Ill. June 7, 2022); *Spring W.*, 2021 WL 2529615, at *3-4; *Peter L.*, 2021 WL 2473799, at *3-6; *Rose v. Berryhill*, No. 17-cv-582, 2018 WL 6590561, at *5-6 (N.D. Ill. Dec. 14, 2018); *Lugo v. Colvin*, No. 2:13-cv-203, 2014 WL 3687235, at *16-17 (N.D. Ind. July 23, 2014). Dr. Amdur's opinion was the only opinion of record in *Michael G.*, 2022 WL 4119775, at *17, because the claimant did not raise the issue of mental impairments until the reconsideration phase and only then retained Dr. Amdur to render an opinion. Here, Dr. Amdur's opinion is the only substantive opinion at least in part because neither Plaintiff nor her counsel responded to the state agency consultants' requests. *See supra*, n. 4, n.5.

10

18-C-277, 2019 WL 13090104, at *15 (E.D. Wis. Mar. 16, 2019) (additional citation omitted)). Similarly, the ALJ was permitted to "consider the lack of specificity" of Dr. Amdur's opinion "in assigning weight to that opinion." *Michael G.*, 2022 WL 4119775, at *17. The Court finds no error in the ALJ's analysis on this issue.

Pointing next to Dr. Amdur's administration of a mental status examination and the "MoCA,"[7] Plaintiff also labels the ALJ's analysis "patently wrong" to the extent she found Dr. Amdur "provide[d] little objective support for his assessments" and over-relied upon Plaintiff's subjective reports. (Dkt. 17 at 12.) Although Plaintiff insists the MoCA evaluates factors like "attention, concentration" and others, Plaintiff does not explain how Dr. Amdur's findings in either the mental status examination or the MoCA indicate a particular error in the formulation of the RFC and therefore has not demonstrated reversible error on that ground. *See Birmingham v. Kijakazi*, No. CIV-22-450-STE, 2023 WL 6380007, at *6 (W.D. Okla. Sept. 29, 2023) (rejecting claimant's argument based upon her "MoCA score" because claimant "offer[ed] no argument regarding how she believes this score had undermined the RFC"); *see also Peter L. v. Saul*, No. 19-cv-566, 2021 WL 2473799, at *6 (N.D. Ill. June 17, 2021) ("Plaintiff's arguments notwithstanding, Dr. Stahnke did not offer an opinion on Plaintiff's ability to perform work-related tasks on a sustained basis . . ., and the GAF score she obtained during her examination does not defeat the ALJ's reasoning in limiting the weight afforded to Dr. Amdur's opinion.").

---

[7] Plaintiff describes "[t]he mental status examination" as "a structured assessment of the patient's behavioral and cognitive functioning" and the MoCA [the Montreal Cognitive Assessment (*see* R. 395)] as "a brief, easily applied screening test that is highly effective for detecting cognitive impairment." (Dkt. 17 at 12.) *But see Gill v. Unum Life Ins. Co. of Am.*, No. 19-CV-04066-EMC, 2020 WL 6868832, at *9 (N.D. Cal. Nov. 23, 2020) (noting that defendant insurance company's hired physician opined that "the MOCA test was developed for screening of cognitive function *in clinical populations*" with "neither any diagnostic significance or validity concerning related functional impairment" and also "persuasively explain[ed] that, 'in the absence of other validity data or contextual information' the MOCA test cannot be a basis—let alone the sole basis—for an MCI [mild cognitive impairment] diagnosis, particularly outside the context of clinical studies") (emphasis in original). Plaintiff provides no further explanation regarding the import of these tests or the results.

11

Moreover, while an ALJ may not reject a psychiatric evaluation *solely* because it sets forth subjective complaints of the patient, *see, e.g., Mischler v. Berryhill*, 766 F. App'x 369, 375 (7th Cir. 2019), an ALJ may reject a psychiatrist's opinion where it is "too uncritical or accepting of a patient's subjective complaints, or [does] not adequately assess those complaints through the 'objective lens' of his or her professional experience." *Michael G.*, 2022 WL 4119775, at *14-15 (citations omitted). The ALJ did not improperly reject Dr. Amdur's opinion solely for laying out Plaintiff's subjective reports but instead pointed out that Dr. Amdur had merely parroted Plaintiff's statement about not being able to reliably report on time to work without any other support and had otherwise provided little to tie his opinions to either his observations or treatment records. (R. 30); *see also Michael G.*, 2022 WL 4119775, at *16 (referring to Dr. Amdur's opinion in that case as being "in essence a 'transcription' of subjective reporting"). The ALJ therefore provided proper reasons for rejecting Dr. Amdur's opinion despite the ALJ's reference to Plaintiff's subjective complaints.

Plaintiff finally labels the ALJ's RFC conclusions as "factually erroneous" and "not backed up by the treatment notes." (Dkt. 17 at 12-13.) Plaintiff points to several mentions of "pressured speech," a "depressed" mood, anxious affect, tangential thoughts, restlessness, and difficulty focusing. (Dkt. 17 at 12-13.) The ALJ, though, repeatedly acknowledged and addressed those aspects of the record (R. 26, 27, 28, 29, 30), and therefore did not cherry-pick favorable evidence from the record as Plaintiff suggests. And, even assuming Plaintiff is correct that the ALJ misinterpreted a treatment note – the ALJ cited the note in support of her understanding that Plaintiff "is able to cope with stress," although Plaintiff insists the note merely listed Plaintiff's stressors (Dkt. 17 at 12 (citing R. 30, 438-39)) – that one error does not indicate the ALJ erred in deeming Dr. Amdur's opinion unpersuasive, a decision for which the ALJ gave multiple other reasons. *See Israel D.*, 2022 WL 2046283, at *8-9 (rejecting claimant's arguments that ALJ

12

improperly rejected opinion of Dr. Amdur and another doctor, Dr. Kieffer, because "the ALJ did, in fact describe medical records that contradicted Drs. Kieffer and Amdur" and "acknowledged that th[o]se records documented some cognitive and mental issues" but "did not reflect the severity that Drs. Kieffer and Amdur found").

In all, the ALJ carefully contrasted Dr. Amdur's opinions with the medical records and other evidence, including Plaintiff's failure to obtain mental health counseling for most of the relevant period and specific concerns with Dr. Amdur's opinion, including: (1) lack of a treatment relationship with Plaintiff; (2) failure to indicate a timeframe for opined limitations; (3) non-adherence to a function-by-function analysis; (4) heavy reliance upon Plaintiff's subjective statements; and (5) internal inconsistencies. This is entirely appropriate. *See Kristen K.*, 2022 WL 6123338, at \*4 (holding that "ALJ gave sufficiently good reasons for discounting Dr. Amdur's opinions" where "the ALJ decided to give Dr. Amdur's opinions little weight because, *inter alia*, he was not a treating physician; he was unfamiliar with the applicable rules and regulation; he saw Plaintiff on only one occasion; he may not have seen all the relevant records; he rendered opinions predicated mainly on subjective reports; and he rendered opinions that were inconsistent with other medical opinions in the record"); *Michael G.*, 2022 WL 4119775, at \*18 (noting that ALJ "was permitted to evaluate," in part, "the lack of other record evidence related to Plaintiff's mental health and functioning," and weigh that "against Dr. Amdur's lone opinion, which the ALJ determined to be of no decisional weight, and make a determination about Plaintiff's mental impairments") (citation omitted); *Peter L.*, 2021 WL 2473799, at \*5 (rejecting Plaintiff's arguments as to ALJ's non-acceptance of Dr. Amdur's opinions because of "the ALJ's extensive discussion juxtaposing Plaintiff's presentation to Dr. Amdur with medical records and assessments of Plaintiff's treatment providers").

13

The ALJ fulfilled her duty as to Dr. Amdur's opinion because she considered it with the record as a whole and explained the weight she gave it and why, with traceable reasoning and substantial evidence. *Michael G.*, 2022 WL 4119775, at *17 (holding that, because ALJ had "sufficiently articulated his four reasons for discounting [Dr. Amdur's] opinion such that the Court c[ould] trace the logic of his reasoning[,]" that "decision must [] stand"). In arguing that the ALJ should have found Dr. Amdur's evaluation more persuasive, Plaintiff invites the Court to substitute its judgment for the ALJ's, which the Court cannot do. *See Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) ("Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to determine whether the claimant is in fact disabled."); *Michael G.*, 2022 WL 4119775, at *17 ("emphasiz[ing] that court's role is not to reweigh the evidence, or to re-evaluate Dr. Amdur's opinion and determine if this Court would have weighed it differently than the ALJ" but is instead to "simply determine if the ALJ 'minimally articulated' his reasoning in light of the applicable regulatory factors, and if his decision was supported by substantial evidence"); *Kristen K.*, 2022 WL 6123338, at *4 ("The Court declines Plaintiff's invitation to reweigh the evidence in relation to Dr. Amdur's opinions, which is forbidden.").

D. **The ALJ's Assessment of Plaintiff's Subjective Allegations Is Not Patently Wrong**

Plaintiff finally argues that the ALJ improperly discounted Plaintiff's subjective allegations. First, Plaintiff insists that the ALJ erred in relying upon her activities, which she characterizes as "minimal, basic," as an indication that her subjective symptoms were not entirely consistent with the record. (Dkt. 17 at 14.) Second, Plaintiff urges that an ALJ may not draw a negative inference from a claimant's failure to seek more aggressive treatment without inquiring into and considering the claimant's explanation for not seeking such treatment. (*Id*. at 15.) Third,

Plaintiff contends the ALJ's belief that Plaintiff's allegations are inconsistent with objective medical evidence is a legally insufficient basis for rejecting her allegations. (*Id*. at 15.)

To warrant remand on this ground, the ALJ's assessment must be "patently wrong, which means that the decision lacks any explanation or support." *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014). Plaintiff "cannot show reversible error simply by suggesting the evidence could support an alternative conclusion." *Maria S. v. Kijakazi*, No. 20-cv-6727, 2023 WL 7130376, at *8 (N.D. Ill. Oct. 30, 2023) (citing *Zoch v. Saul*, 981 F.3d 597, 602 (7th Cir. 2020); *L.D.R. v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019).

The ALJ did not obviously over-rely upon Plaintiff's activities as an indicator of her ability to work. As an initial matter, the ALJ accepted many of Plaintiff's alleged symptoms, including that Plaintiff was at times impatient, exhibited pressured speech, had difficulty focusing, and had problems with anxiety. (R. 27-28.) That said, the ALJ also noted that Plaintiff reliably attended and participated in treatment and online meetings, could handle finances, go out alone, use technology for communications, use public transportation, and drive (R. 27, 28, 29, 30), which the ALJ found to be inconsistent with Plaintiff's allegations of her symptoms. The ALJ did not purport to equate those activities with full-time work. Moreover, the ALJ properly evaluated Plaintiff's activities among multiple other factors. *See Green v. Saul*, 781 F. App'x. 522, 526 (7th Cir. 2019) ("ALJs are tasked with reviewing the evidence . . . and assessing whether a claimant is exaggerating . . . and reviewing daily-living activities is an important part of that evaluation."); *Rabdeau v. Kijakazi*, No. 22-CV-674, 2023 WL 5672596, at *9 (W.D. Wis. Sept. 1, 2023) ("[Plaintiff's] activities of daily living are but one factor under [Social Security Ruling ("SSR")] 16-3p, and [the] ALJ [] provided substantial evidence to support his conclusion that [Plaintiff's] subjective allegations were inconsistent with her record as a whole."). The ALJ's determination on this ground was not "patently wrong."

Next, the ALJ mentioned Plaintiff's conservative treatment (and noted Plaintiff's approximately-two-year gap in obtaining mental health counseling) as tending to demonstrate that her symptoms were not as severe as she alleged, but the ALJ did not draw an impermissible negative inference from those facts without considering Plaintiff's reasons. Plaintiff, after all, informed the ALJ she had insurance coverage at the relevant times and testified both that her prior counselor had "left" sometime before the Covid-19 pandemic and that she had not sought mental health treatment for about two years. (R. 27.) The ALJ further noted that Plaintiff was not given a psychiatric referral in that time. (R. 26.) The ALJ was within her power, and thus not patently wrong, in weighing Plaintiff's allegations against the objective medical evidence. *See Jason G. v. Kijakazi*, No. 1:20-CV-486, 2022 WL 500416, at *5 (N.D. Ind. Feb. 18, 2022) ("The significant gap in treatment and lack of treatment since December 2018 was a proper and reasonable consideration by the ALJ, and provides substantial evidence in support of the ALJ's analysis of Plaintiff's symptoms.") (citing SSR 16-3p, 2017 WL 5180304, at *8; *Burnam v. Colvin*, 525 F. App'x 461, 465 (7th Cir. 2013)); *Williamson v. Colvin*, No. 4:13-CV-1 JVB, 2014 WL 1317133, at *6 (N.D. Ind. Mar. 26, 2014) ("The ALJ's statement regarding gaps in treatment and conservative treatment was placed in the larger context of overall credibility and was one of many examples where Plaintiff's subjective complaints were inconsistent with her pursued course of treatment.").

Plaintiff's final argument, that the ALJ ultimately improperly concluded that Plaintiff's testimony is inconsistent with the objective medical evidence, is a non-starter. The Court has upheld the ALJ's other reasons for rejecting (in part) Plaintiff's testimony. The ALJ properly considered, among other factors, the consistency of Plaintiff's testimony with the objective medical evidence; it is not the Court's function to reweigh that evidence. *See Thompson K. v.*

*Kijakazi*, No. 21-cv-1298, 2023 WL 7016621, at *7 (N.D. Ill. Oct. 25, 2023) (citing *Gedatus*, 994 F.3d at 901).

### III. CONCLUSION

For the reasons detailed above, Plaintiff's motion for summary judgment (Dkt. 16) is denied, and the Commissioner's motion (Dkt. 18) is granted. The decision of the Commissioner is affirmed.

ENTERED: March 11, 2024

Hon. Keri L. Holleb Hotaling
United States Magistrate Judge